UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                          :
VIKAS SAREEN,                                             :
                                                          :                    12 Civ. 2823 (PAE)
                                        Plaintiff,        :
                                                          :               <u>OPINION & ORDER</u>
                          -v-                             :
                                                          :
THE PORT AUTHORITY OF NEW YORK AND NEW                    :
JERSEY, SUSAN M. BAER, RICHARD J. LOUIS,                  :
ADRIAN JOHNSTON, JAMES A. STEVEN, RENE                    :
PEARSON-SMALLS,                                           :
                                                          :
                                        Defendants.       :
                                                          :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       *Pro se* plaintiff Vikas Sareen ("Sareen"), a former employee of the Port Authority of

New York and New Jersey ("Port Authority"), brings claims of discrimination and retaliation

against the Port Authority and several former supervisors and coworkers, Susan M. Baer,

Richard J. Louis, Adrian Johnston, James A. Steven, and Rene Pearson-Smalls (collectively,

"defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.*

("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 1983 ("§ 1983"), the Age Discrimination

in Employment Act of 1967, 29 U.S.C. §§ 621−634 ("ADEA"), and the New York State

Constitution.  Sareen contends that defendants unlawfully discriminated against him on the basis

of his race, national origin, and age in failing to promote him and refusing to reinstate him at the

conclusion of a long-term leave of absence.  He also brings claims for fraud, intentional

misrepresentation, and intentional infliction of emotional distress under New York law in

connection with those events, as well as a claim for a declaratory judgment pursuant to 28 U.S.C.

1

§§ 2201, *et seq*.  Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, the motion is granted.

## I.  Background[1]

### A.  The Parties

The Port Authority is a bi-state transportation agency that operates various transportation facilities in New York and New Jersey.  Def. 56.1 Statement ¶¶ 1, 3; Pl. 56.1 Statement ¶¶ 1, 3. The Port Authority's Aviation Department oversees the operation and management of the aeronautical facilities within the agency's jurisdiction, including John F. Kennedy International Airport ("JFK"), Newark International Airport ("Newark"), and LaGuardia Airport ("LaGuardia").  Def. 56.1 Statement ¶ 4; Pl. 56.1 Statement ¶ 4.  The Physical Plant & Redevelopment Unit at JFK (f/k/a the Physical Plant, Structures & Redevelopment Unit) is responsible for overseeing the airport's physical structures and facilities.  Steven Aff. ¶ 1.

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' submissions in support of and in opposition to this motion, including: Declaration of Megan Lee in Support of Defendants' Motion for Summary Judgment ("Lee Decl.") (Dkt. 57); Affidavit of James S. Steven in Support of Defendants' Motion for Summary Judgment ("Steven Aff.") (Dkt. 52); Affidavit of Rene Pearson-Smalls in Support of Defendants' Motion for Summary Judgment ("Pearson-Smalls Aff.") (Dkt. 53); Affidavit of Maria Bordas in Support of Defendants' Motion for Summary Judgment ("Bordas Aff.") (Dkt. 54); Affidavit of Adrian Johnston in Support of Defendants' Motion for Summary Judgment ("Johnston Aff.") (Dkt. 55); Affidavit of Richard J. Louis in Support of Defendants' Motion for Summary Judgment ("Louis Aff.") (Dkt. 56); Affidavit of Vikas Sareen in Opposition to Defendants' Motion for Summary Judgment ("Sareen Aff.") (Dkt. 63); Defendants' 56.1 Statement ("Def. 56.1 Statement") (Dkt. 51); and Plaintiff's Rule 56.1 Statement ("Pl. 56.1 Statement") (Dkt. 61).  Citations to a party's 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Within the Physical Plant & Redevelopment Unit, the Tenant Facilities Office is responsible for, *inter alia*, construction and maintenance of airport facilities. *Id.* ¶ 3.

From 2007 to 2008, Susan Baer ("Baer") was the General Manager of JFK; in 2008 she became the Deputy Director of the Aviation Department, and in 2009 the Director of Aviation. Lee Decl. Ex. 1 ¶ 8; Sareen Aff. ¶¶ 19, 83. Baer held the position of Director of Aviation for the remainder of the relevant time period.

Before 2008, Richard Louis ("Louis") was the Manager of the Physical Plant & Redevelopment Unit at JFK. In 2008, Louis became the Deputy General Manager of JFK; he held that position for the remainder of the relevant time period. Louis Aff. ¶ 1; Sareen Aff. ¶ 83.

In 2008, James Steven ("Steven") became the Manager of the Physical Plant & Redevelopment Unit; Steven held that position for the remainder of the relevant time period. Steven Aff. ¶¶ 1−5; Sareen Aff. ¶¶ 19, 83.

In 2009, Adrian Johnston ("Johnston") became the Manager of Facilities within the Physical Plant & Redevelopment Unit of JFK. Johnston Aff. ¶ 2. Johnston held that position for the remainder of the relevant time period. In that post, Johnston was responsible for, *inter alia*, supervising the Tenant Facilities Office. *Id.*

At all relevant times, Rene Pearson-Smalls ("Pearson-Smalls") was a Senior Human Resources Executive in the Port Authority's Human Resources Department who provided personnel management services to the Aviation Department. Pearson-Smalls Aff. ¶ 2.

Sareen, age 46, is of Indian descent. Sareen Aff. ¶ 3. He holds a Bachelor's Degree in Civil Engineering, a Master's Degree in Structural/Civil Engineering, and a law degree. *Id.* ¶ 7. He is also a licensed Professional Engineer in New York State. *Id.* Sareen was a Port Authority employee for more than 20 years before his termination. Between 1988 and 1993, he worked at

the World Trade Center in the Engineering Department. *Id.* ¶ 9. Between 1994 and 2010, he

worked in the Aviation Department at JFK Airport. *Id.*

### B.        The Port Authority's Promotion Process

When a position within the Aviation Department becomes available, the unit seeking to

fill the vacancy may choose to issue a job posting or "bulletin," listing the responsibilities

associated with the position and seeking qualified applicants from within the Port Authority.

Bordas Aff. ¶ 3. Interested candidates are directed to submit written applications to the Human

Resources Department outlining their qualifications. The Aviation Department and the Human

Resources Department then conduct a joint screening process: The Human Resources executive

assigned to the Aviation Department reviews the written submissions, and based on those written

submissions, determines which candidates are most qualified for the position. *Id.* ¶ 5. The

applicants identified by the Human Resources executive as most qualified are then interviewed

by the Aviation Department; the relatively less qualified applicants are not interviewed. The

Aviation Department, in consultation with the Human Resources Department, then decides

whom to hire from the pool of interviewees. *Id.* ¶¶ 6, 7.

### C.        The Port Authority's Ordinary Long-Term Leave Policy

Port Authority employees may request short-term or long-term unpaid leaves of absence

from work, "which may be granted to employees when it is clearly desirable in light of an

employee's need and is in the best interests of the Port Authority to do so." Human Resources

Policy 5:04 (Nov. 1993) ("HRP"), Lee Decl. Ex. 3, at 1 (defining "Unpaid Ordinary Leaves of

Absence"). Pursuant to Port Authority policy, such leave "may be granted for personal

exigencies not covered by other time off policies," including "Vacation, Personal Leave,

Maternity Leave, Excused Absence, Military Leave, Sick Leave, Family and Medical Leave." *Id.*

Permanent employees who have completed their probationary year, and whose job performance record is satisfactory, may request long-term leave in excess of 14 days, not to exceed one year. *Id.* Pursuant to official agency policy, "[t]he Port Authority does not guarantee return to employment to employees on Long-Term Leave, and requests for reinstatement will be considered based upon job availability." *Id.*; *see also* Office of the Executive Director, Administrative Instruction: Unpaid Ordinary Leaves of Absence (Mar. 5, 1999), Lee Decl. Ex. 4, at 2 ("Long-Term Ordinary Leaves of Absence carry no guarantee of return to work following the expiration of the leave. Employees on such leaves may request reinstatement, but such reinstatement may not be granted. All employees on Long-Term Ordinary Leave who are not reinstated for whatever reason following expiration of the leave are considered to have voluntarily resigned their employment with the Port Authority.").

An employee requesting long-term leave must submit to his or her Unit Supervisor a written request "includ[ing] the estimated period of time desired, approximate starting and ending dates, and the reason(s) why leave is necessary." HRP at 2. In that request, the employee should also acknowledge that reinstatement is not guaranteed and is subject to job availability at the time of the request for reinstatement. *See id.* at 6. The employee's Unit Supervisor must sign the request, and then forward it to the Department/Office Director for approval. *Id.* at 2. If the Department/Office Director approves the request, he or she will then forward it to the Director of the Human Resources Department for final approval. *Id.*

Before the expiration of a term of long-term leave, an employee may make a written application for reinstatement to the Department/Office Director. *See id.* at 3. Upon receiving an

application for reinstatement, the Department/Office Director either approves or disapproves the application based on job availability, and then forwards the application to the Human Resources Department so the decision can be reflected in the employee's records.  *See id.*; Pearson-Smalls Aff. ¶¶ 11−12.

### D.    Facts of the Instant Case

In August 2007, Sareen applied for the position of Manager of the Plant, Structures & Redevelopment Unit at Newark Airport, Level B-97, in response to a job bulletin.  *See* Lee Decl. Ex. 17, 18.  Fourteen individuals, including Sareen, applied.  Of the 14 candidates, eight were screened out by the Human Resources Department based on their written applications, including Sareen.  *See* Lee Decl. Ex. 19; Pearson-Smalls Aff. ¶ 22.  Sareen was "screened out of the application process because his written application did not detail his experience in the areas of managing capital and major work programs and project management when compared with other applicants."  Pearson-Smalls Aff. ¶ 23.  At the time, Sareen was a Supervising Engineer, Level B-95, in Plant, Structures & Redevelopment at JFK.  *Id.* ¶ 19.  Following the interview process, the position went to James Heitmann, a 44-year old of Asian/Island Pacific descent who had previously held the position of Manager of Maintenance, Level B-96, at Newark Airport.  *Id.* ¶¶ 25, 26.

In February 2009, Sareen applied for the position of Senior Program Manager of the Plant, Structures & Redevelopment Units at both JFK and LaGuardia, Level B-97.  *Id.* ¶ 27.   Of the 21 individuals who applied for these jobs, 12 were screened out by the Human Resources Department based on their written applications, including Sareen.  *Id.* ¶ 31.  Sareen was "screened out of the application process because his written application did not detail his experience in the area of project management as compared with other applicants."  *Id.* ¶ 32.  At

6

the time, Sareen still held the post of Supervising Engineer, Level B-95, in Plant, Structures & Redevelopment at JFK. *Id.* ¶ 28.  Following the interview process, Paul Johnke, a 51-year old white man who had previously held the position of Senior Program Manager, Level B-97, in the World Trade Center Construction department, was chosen for the position at JFK; Angel Martinez, a 46-year old Hispanic man who had previously held the position of Program Manager, Level B-96, in the Chief Operating Officer's Department, was chosen for the position at LaGuardia. *Id.* ¶¶ 34−37.

Also in February 2009, Sareen applied for the position of Program Manager of the Plant, Structures & Redevelopment Unit at JFK Airport, Level B-96. *Id.* ¶ 38.  Of the 16 applicants, 10 were screened out by the Human Resources Department based on their written submissions. *Id.* ¶ 41.  Sareen and five other individuals were selected to interview for the position. *Id.* ¶ 42. Following the interview process, Johnston, a 39-year old white woman who had previously held the position of Supervisor of Maintenance, Planning and Administration at Newark Airport, Level B-94, was selected to fill the position. *Id.* ¶¶ 44, 45.  Steven, who interviewed Sareen, reported that Sareen, although qualified for the position, performed poorly during the interview, and for that reason was not recommended to fill the post. *See* Steven Aff. ¶ 10.

In November 2009, Sareen approached Louis, his immediate supervisor, to complain about being passed over for these promotions. *See* Lee Decl. Ex. 2 at 227−28**.**  Sareen expressed to Louis his belief that his race/national origin was a contributing factor, if not the deciding factor, in the selection process.  Louis Aff. ¶ 5; Sareen Aff. ¶¶ 24, 25.  However, no further action was taken at that time:  Louis did not forward Sareen's complaint to his superiors, *see* Louis Aff. ¶ 7; and Sareen did not file a formal complaint with the Human Resources

Department or the Port Authority Equal Employment Opportunity Compliance Office, *see*
Sareen Aff. ¶ 27.  *See also* Lee Decl. Ex. 2 at 232−36, 240, 244.

On May 19, 2010, Sareen submitted a written request for long-term leave to Steven, his
Unit Manager, and Baer, the Director of Aviation.  *See* Lee Decl. Ex. 5.  His written request
indicated that he sought one year's leave, beginning May 20, 2010, in order to tend to legal
matters in India.  *See id.*  Sareen's request explicitly acknowledged that reinstatement following
leave was not guaranteed.  *See id.* ("I understand that my reinstatement upon expiration of the
leave is not guaranteed and is subject to job availability at the time that I request such
reinstatement.").

On May 20, 2010, Steven approved Sareen's request for leave, and forwarded the request
to Baer for her approval.  *See* Lee Decl. Ex. 6.  On June 3, 2010, Baer signed off on Sareen's
request.  *See id.*  The request was then forwarded to the Director of the Human Resources
Department, who granted final approval on June 11, 2010.  *See id.*  On July 6, 2010, approval for
leave "begin[ning] on 5/20/2010 and end[ing] on 5/19/2011" was formally communicated to
Sareen, who was already in India by that time.  *Id.*

On May 3, 2011, Sareen submitted a written request for reinstatement to Steven via
email.  *See* Lee Decl. Ex. 7.  On May 10, 2011, Steven responded to Sareen via email.  Steven
informed Sareen that his previously-held position number had been filled by Frantz Constant,
and thus was no longer available, and the Tenant Facilities Office manager position had been
"effectively eliminate[d]."[2]  Lee Decl. Ex. 8.  Steven further indicated that he would try to

---

[2] Sareen's former position appears to have been eliminated as part of a state-sponsored retirement
incentive program.  *See* Lee Decl. Ex. 14; Steven Aff. ¶ 22.  For every two or three employees
who retired from a particular department, the program required that one position in that
department be eliminated.  *See* Steven Aff. ¶¶ 19, 21; Bordas Aff. ¶ 26.  Often, positions were
combined or responsibilities redistributed within the Aviation Department to ensure that essential

convert a union position into a management position that could be offered to Sareen, but that he could not make any promises due to the Port Authority's policy regarding reinstatement following long-term leave. *See id.* Steven forwarded Sareen's request to Maria Bordas ("Bordas"), the General Manager responsible for overseeing personnel issues in the Aviation Department, to determine whether there was another suitable position that could be offered to Sareen in his previous Unit. Steven Aff. ¶ 25; Bordas Aff. ¶ 19. On May 11, 2011, Sareen submitted a revised request for reinstatement. *See* Lee Decl. Ex. 9. On July 13, 2011, Sareen received a memorandum from Baer notifying him that his request for reinstatement had been denied because no vacant positions suitable for him could be identified. Lee Decl. Ex. 10 & 11; Bordas Aff. ¶ 21.

On July 14, 2011, Sareen submitted a request to Bordas, asking to be considered for any available positions in the Aviation Department. Lee Decl. Ex. 23; Bordas Aff. ¶ 23. On July 22, 2011, Pearson-Smalls notified Sareen that his "prior separation from Port Authority employment will not be reversed," but he should "feel free" to apply "for any future employment opportunities" listed on the Port Authority's website. Lee Decl. Ex. 13.

On October 7, 2011, Sareen filed an intake questionnaire with the U.S. Equal Employment Opportunity Commission ("EEOC"). Sareen Aff. ¶ 55, *id.* Ex. P-17 & 18. On November 4, 2011, Sareen filed a formal EEOC charge, in which he complained of discrimination on various grounds in being passed over for promotions and being denied reinstatement. *See* Lee Decl. Ex. 35. On March 19, 2012, the EEOC issued a "Right-to-Sue Letter." *See* Lee Decl. Ex. 1, 2.

---

functions were maintained. *See* Lee Decl. Ex. 15; Steven Aff. ¶ 20; Bordas Aff. ¶¶ 9, 10. Sareen contends that this is merely a post-hoc rationalization for defendants' refusal to reinstate him, but offers no evidence to indicate their explanation was false. *See* Sareen Aff. ¶ 57.

### E.      Procedural History

On April 10, 2012, Sareen, proceeding *pro se*, filed his Complaint in this case, alleging

that in failing to promote him on several occasions in 2007 and 2009, and in refusing to reinstate

him following his period of long-term leave, defendants had discriminated against him on the

basis of race, national origin, and age, and/or retaliated against him for complaining about such

discrimination, in violation of Title VII, the ADEA, and the Federal and New York State

Constitutions.  Dkt. 2.  The Complaint also alleges fraud, intentional misrepresentation, and

infliction of emotional distress under New York law, and seeks declaratory relief.  On August 20,

2012, defendants answered.  Dkt. 9.  On August 9, 2013, defendants filed the present motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, Dkt. 49, and

their supporting memorandum of law, Dkt. 58 ("Def. Br.").  On October 4, 2013, Sareen filed a

memorandum of law in opposition to defendants' summary judgment motion.  Dkt. 62 ("Pl.

Br.").  On October 24, 2013, defendants filed a reply brief.  Dkt. 69 ("Def. Reply Br.").

## II.      Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

To survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1);

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment," because "conclusory allegations or denials cannot by themselves create a genuine

issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166

(2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the

suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty

Lobby Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of

material fact, the Court is "required to resolve all ambiguities and draw all permissible factual

inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*,

680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).

### III.     Discussion

#### A.       Title VII Discrimination Claim (Failure to Promote)

Sareen alleges that, in failing to promote him on several occasions in 2007 and 2009, the

Port Authority unlawfully discriminated against him on the basis of his race and national origin

in violation of Title VII.

Before bringing suit under Title VII, a plaintiff must first file a claim with the EEOC.

*See* 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d).  Federal law "generally requires a charge to be

filed with the EEOC within 180 days after the alleged unlawful practice or within 300 days

where the alleged unlawful practice occurred in 'a State which has a law prohibiting

discrimination in employment . . . *and* establishing or authorizing a State authority to grant or

seek relief from such discriminatory practice.'" *Dezaio v. Port Auth. of N.Y. & N.J.*, 205 F.3d

62, 65 (2d Cir. 2000), *cert denied*, 531 U.S. 818 (2000) (quoting 29 U.S.C. § 633(b)) (emphasis

in *Dezaio*); *see also Vernon v. Port Auth. of N.Y. & N.J.*, 154 F. Supp. 2d 844, 850 (S.D.N.Y.

2001).  Sareen has not made a discrimination claim under state law, and in any event New York

11

City and State anti-discrimination and human rights laws do not extend to the Port Authority. *See Vernon*, 154 F. Supp. 2 at 850.  Accordingly, the 180-day rule applies to Sareen's Title VII claims.

Sareen's Title VII failure to promote claims arise out of an August 2007 application for the position of Manager of Plant, Structures & Redevelopment at Newark, and February 2009 applications for similar positions at JFK and LaGuardia, all of which were denied.  Although Sareen spoke with a supervisor regarding his frustration at being passed over for these promotions in November 2009, he did not file an EEOC claim until November 2011, years after the promotion decisions he challenges.[3] *See* Def. 56.1 ¶¶ 63, 64, 69; Pl. 56.1 ¶¶ 63, 64, 69. Sareen argues that his failure to promote claims are nonetheless timely because the Port Authority's ongoing practice of screening out candidates for particular positions before they are interviewed (allegedly in a discriminatory manner) constitutes a continuing violation of Title VII.  Pl. Br. 12−13.

The Second Circuit indeed recognizes an exception to the Title VII limitations period for so-called continuing violations based on an ongoing discriminatory policy.  *See Annis v. Cnty. of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998).  "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1329–30 (2011).  In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court distinguished,

---

[3] Sareen filed an Intake Questionnaire with the EEOC on October 7, 2011; he did not file a formal charge until November 4, 2011.  Sareen Aff. ¶ 55; Lee Decl. Ex. 35.

for the purposes of the continuing-violation doctrine, "discrete acts," *i.e.* discriminatory acts that occur at a particular time, *id.* at 113−15, from "continuing violations," *i.e.* a pattern of discriminatory acts extended over time pursuant to a discriminatory policy that, taken together, constitute a single unlawful employment practice, *id.* at 115−`8.  *See Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 463 (S.D.N.Y. 2010).  The *Morgan* Court explained that, unlike continuing violations, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act." 536 U.S. at 113.

The law in this Circuit is clear that, under *Morgan*, "failures to promote are 'discrete acts' of discrimination and thus do not implicate the continuing-violation doctrine." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 156 (2d Cir. 2012).  The Second Circuit explained in *Chin* that, "under *Morgan*, every failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline.  Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Id.* at 157.  This is true even where the plaintiff alleges an ongoing discriminatory policy.  *See id.* ("[A]n allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts."). Indeed, in *Chin*, the continuing violation theory articulated by the plaintiffs—but rejected by the Second Circuit—was the process by which the Port Authority made promotion decisions and its purported disparate impact on minorities.  *See id.* at 158.

Sareen similarly attempts to style his Title VII failure to promote claim as a challenge to the process by which the Port Authority made employment decisions; such a claim does not extend the limitations period.  Each time the Port Authority failed to promote Sareen, he had 180 days to file an EEOC charge.  He failed to do so.  Accordingly, his Title VII failure to promote claims are time-barred.[4]

### B.    Sections 1983 and 1981 Discrimination Claims (Failure to Promote)

Sareen also brings unlawful discrimination claims in connection with the individual defendants' failure to promote him under §§ 1983 and 1981.

Although the parties do not directly address this issue in their briefs, Sareen's §§ 1983 and 1981 failure to promote claims also face timeliness hurdles.  "The statute of limitations for a § 1983 claim arising in New York is three years; the statute of limitations for a § 1981 claim is four years."  *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011) (internal citations omitted).  And, for the reasons discussed above, the continuing violation doctrine is inapplicable here; each failure to promote was a discrete event with its own statute of limitations, and a claim of a discriminatory policy or practice cannot rescue any untimely claims.  *See*

---

[4] The parties, in their briefs, disagree as to whether Sareen's ADEA failure to promote claims are also time-barred.  *See* Def. Br. 7−8; Pl. Br. 12−13.  But the Complaint does not appear to allege that any discrimination in connection with defendants' failure to promote him was on the basis of age.  Sareen's only ADEA claims focus on events in 2011 surrounding the Port Authority's decision not to reinstate him.  Although *pro se* complaints must be construed liberally, the normal pleading standards still apply; the Court cannot manufacture claims not raised by a *pro se* plaintiff.  *See Garibaldi v. Anixter, Inc.*, 492 F. Supp. 2d 290, 292 (W.D.N.Y 2007) ("Where the party opposing summary judgment is proceeding *pro se*, the Court must read the pleadings . . . liberally and interpret them to raise the strongest arguments that they suggest.  Nevertheless, proceeding *pro se* does not otherwise relieve [opposing party] from the usual requirements of summary judgment." (internal quotation marks and citation omitted) (alterations in original)).  The Court notes, however, that even if the Complaint could be liberally read to state a failure to promote claim under the ADEA, such a claim would be time-barred for the same reasons Sareen's Title VII failure to promote claims are time-barred.

*Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 72 (2d Cir. 2010); *accord Askew v. New York*, No. 09 Civ. 553 (GLS) (RFT), 2013 WL 450165, at *9 (N.D.N.Y. Feb. 6, 2013).  Because the Complaint was filed on April 10, 2012, events before April 10, 2009 cannot form the basis of any § 1983 claim, and events before April 10, 2008 cannot form the basis of any § 1981 claim.  Accordingly, Sareen's §§ 1983 and 1981 discrimination claims, to the extent they arise out of defendants' failure to promote him in August 2007, are dismissed as time-barred, as is his § 1983 claim, to the extent it is premised on defendants' failure to promote him in February 2009.  Sareen's § 1981 claim arising out of events in February 2009 is his only timely claim for failure to promote.

Section 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Section 1981 thus "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004).

Section 1981 discrimination claims are analyzed under the *McDonnell-Douglas* burden-shifting framework applicable to Title VII discrimination claims, *White v. Eastman Kodak Co.*, 368 F. App'x 200, 201 & n.1 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), "which places upon the plaintiff the initial burden of making out a prima facie case of discrimination," *Askew*, 2013 WL 450165, at *10.  Unlike Title VII, however, § 1981 permits the imposition of individual liability, provided the plaintiff can show the personal involvement of each individual defendant.  *See Evans v. Port Auth. of N.Y. & N.J.*, 192 F. Supp. 2d 247, 280 & nn. 208, 209 (S.D.N.Y. 2002).

To establish a prima facie case of discrimination under § 1981, a plaintiff must show that: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). "[O]nce plaintiff establishes a *prima facie* case, a presumption arises that his employer unlawfully discriminated against him." *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 380 (2d Cir. 2003). The employer can "rebut this presumption . . . [by] com[ing] forward with admissible evidence of legitimate nondiscriminatory reasons for its adverse actions toward plaintiff." *Id.*

Defendants do not dispute that Sareen has satisfied two of the three elements of the prima facie case: He is a member of a racial minority, and the alleged discrimination occurred in a workplace setting in which he sought to make or enforce contracts. Sareen's § 1981 failure to promote claims thus turn on whether he has established the remaining element of the prima facie case: discriminatory intent. *See Lauture v. IBM Corp.*, 216 F.3d 258, 261 (2d Cir. 2000) (§ 1981 plaintiff must demonstrate "intent to discriminate on the basis of race by the defendant").

Sareen attempts to show discriminatory intent on the part of defendants in denying his 2009 applications for promotion by claiming disparate treatment, *i.e.*, that he was screened out of the interview process or otherwise denied promotional opportunities in favor of candidates who were not minorities or were younger. But he offers no evidence to establish that he was treated less favorably than similarly situated employees outside his protected groups. *See Mandell*, 316 F.3d at 379 ("A plaintiff relying on disparate treatment evidence 'must show []he was similarly

situated in all material respects to the individuals with whom []he seeks to compare h[im]self.'") (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

With respect to Sareen's February 2009 applications for the positions of Senior Program Manager of the Plant, Structures & Redevelopment Units at both JFK and LaGuardia, for which he was screened out of the interview process by virtue of his written application, Sareen fails to point to *any* similarly situated individual outside his protected groups who received more favorable treatment than he.  Indeed, the person ultimately hired for the JFK position (Paul Johnke) was older than Sareen; and the person hired for the LaGuardia position (Angel Martinez) was a member of a minority group.  Thus, the evidence adduced by Sareen is insufficient to establish discriminatory intent in connection with that employment action.

With respect to his February 2009 application for the position of Program Manager of the Plant, Structures & Redevelopment Unit at JFK, Sareen primarily stakes his discrimination claim on the fact that Johnston, a younger white woman, was ultimately awarded the position, and the claim that "Johnston . . . was less qualified and less experienced [than Sareen] and did not fully meet the minimum job requirements."  Pl. Br. 16.  But Sareen does not offer any evidence on which to assess Johnston's qualifications; there is no evidence to "support at least a minimal inference that the difference of treatment may be attributable to discrimination."  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *see also Graham*, 230 F.3d at 39 ("plaintiff must show []he was 'similarly situated in all material respects' to the individuals with whom []he seeks to compare h[im]self" (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997))).  Although the question of "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury," *Graham*, 230 F.3d at 39, "[t]his rule is not absolute and 'a court can properly grant summary judgment where it is clear that no reasonable

jury could find the similarly situated prong met,'" *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)). *Accord Stephens-Buie v. Shinseki*, No. 09 Civ. 2397, 2011 WL 2574396, at *3– *4 (S.D.N.Y. June 27, 2011). The fact that the person who was hired, Johnston, is outside of Sareen's protected group, without more, is insufficient to support an inference of discriminatory intent. *See Turner v. NYU Hospitals Ctr.*, 784 F. Supp. 2d 266, 283 (S.D.N.Y. 2011) ("Absent such evidence [of discriminatory animus], the differences in national origin and race are simply insufficient to themselves demonstrate intentional unlawful discrimination."); *Stephens-Buie*, 2011 WL 2574396, at *5.

In any event, even assuming Sareen could make out a prima facie case of discrimination, defendants have supplied a legitimate, non-discriminatory explanation for the decision not to promote him, and to hire Johnston instead: According to Steven, Sareen did not perform well at the interview. *See* Steven Aff. ¶ 10 ("Based on answers given to questions, plaintiff did not appear to have adequately prepared for the interview. He did not articulate how he would use his experience to fill the position or expound on how he would project himself into the Capital Planning and authorization processes, which are a significant part of the job.").

This shifts the burden back to Sareen to adduce evidence indicating that the proffered explanation was mere pretext for race or national origin discrimination. *See Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985). But Sareen has not pointed to any evidence that would tend to show that defendants' stated reason is not credible, and that the failure to promote him was actually motivated by invidious discrimination. For the reasons stated above, Sareen's argument that he was more qualified for the position than Johnston is not supported by sufficient evidence in the record to create a fact

issue as to whether defendants' stated reason was pretextual.  *See Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (to create fact issues regarding plaintiff's job qualifications, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question" (internal quotation marks omitted)); *Turner*, 784 F. Supp. 2d at 279 (rejecting disparate treatment claim premised on hiring of purportedly less qualified individual because "[p]laintiff has failed to produce any evidence demonstrating that his qualifications were so superior that an unreasonable disparity existed between Plaintiff and [the person hired]").  And even if Sareen could show that Johnston was less qualified, his claim would still fail, because he cannot show that any differential treatment was motivated by race-based animus.  *See Turner*, 784 F. Supp. 2d at 282 (granting summary judgment to defendant because "[p]laintiff has failed to produce any evidence that similarly situated employees outside his protected class were treated more favorably than him *on account of race or national origin*" (emphasis in original)).

Although Sareen claims that the materials from his 2009 interview would show that defendants' proffered explanation for failing to promote him were false, and that defendants' failure to provide him with these materials entitles him to an adverse inference, *see* Pl. Br. 19, 24−25, this purported failure entitles him to no such inference:  Defendants could not have known in 2009 that these documents would be relevant to a future litigation and thus had no obligation to preserve them, *see Byrnie*, 243 F.3d at 107–108 (no adverse inference where "the party having control over the evidence . . . had [no] obligation to preserve it at the time it was destroyed" (internal quotation marks omitted)).  And, in any event, such an adverse inference alone would be insufficient to create a question of material fact as to discriminatory intent.

Accordingly, Sareen cannot, as a matter of law, prevail on his § 1981 failure to promote claim, and defendants are entitled to summary judgment.[5]

### C.    Title VII, ADEA, §§ 1983 and 1981 Discrimination Claims (Refusal to Reinstate)

Sareen alleges that, in refusing to reinstate him following his long-term leave of absence, defendants discriminated against him on the basis of his race, national origin, and age, or subjected him to disparate treatment on those bases.[6]

Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  The ADEA makes it unlawful for any employer to "discriminate against any individual . . . because of such individual's age."  29 U.S.C. § 623(a).[7]

Title VII and ADEA discrimination claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas, supra*.  *See Scaria v. Rubin*, 117 F.3d 652, 653 (2d Cir. 1997) (applying burden-shifting framework to Title VII and ADEA claims); *Vernon*,

---

[5] Because defendants are entitled to summary judgment on Sareen's § 1981 failure to promote claim, the Court does not have occasion to address defendants' claims that (1) the Port Authority cannot be held liable under § 1981 because Sareen has not established that the purported discrimination was pursuant to a municipal policy or practice; and (2) individual defendants Baer, Louis, and Johnston cannot be held individually liable under § 1981 because they were not personally involved in the challenged employment action.

[6] The alleged adverse employment action—the Port Authority's decision not to reinstate Sareen—occurred in or around July 2011.  Sareen filed an Intake Questionnaire with the EEOC on October 7, 2011, and filed a formal charge on November 4, 2011.  Sareen Aff. ¶ 55; Lee Decl. Ex. 35.  Accordingly, Sareen's Title VII and ADEA claims relating to the denial of reinstatement are timely.

[7] Individuals are not subject to liability under either Title VII or the ADEA.  *See Rozenfeld v. Dep't of Design & Const. of City of N.Y.*, 875 F. Supp. 2d 189, 201 (S.D.N.Y. 2012).  Accordingly, Sareen cannot state Title VII or ADEA claims against the individual defendants.  Section 1983 and 1981 claims, however, can carry individual liability.  *See Feingold v. N.Y.*, 366 F.3d 138, 159 n.20 (2d Cir. 2004); Evans, 192 F. Supp. 2d at 280.

154 F. Supp. 2d at 853−54 (same).  Under the *McDonnell-Douglas* test, "a plaintiff complaining

of a discriminatory failure to hire must first make out a prima facie case of discrimination by

showing that (1) he is a member of a protected class, (2) he was qualified for the job for which

he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give

rise to an inference of invidious discrimination." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106

(2d Cir. 2010).  Once a plaintiff has shown a prima facie case, a presumption of discrimination

arises, and "the burden shifts to the employer to come forward with a nondiscriminatory reason

for the decision not to hire the plaintiff."  *Id.*

"If the employer articulates such a reason, the plaintiff 'is given an opportunity to adduce

admissible evidence that would be sufficient to permit a rational finder of fact to infer that the

employer's proffered reason is pretext for an impermissible motivation.'"  *Vivenzio*, 611 F.3d at

106 (quoting *Howley*, 217 F.3d at 150).  At this stage, "the plaintiff can no longer rely on the

prima facie case, but may still prevail if []he can show that the employer's determination was in

fact the result of discrimination."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir.

2010).[8]  However, "if the record conclusively reveal[s] [a] nondiscriminatory reason for the

employer's decision, or if the plaintiff create[s] only a weak issue of fact [as to pretext] and there

[i]s abundant and uncontroverted independent evidence that no discrimination ha[s] occurred,"

then the employer is entitled to summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133, 148 (2000); *see also Richardson v. Comm'n on Human Rts. & Opportunities*, 532

---

[8] For discrimination claims under Title VII, the plaintiff need only adduce admissible evidence tending to show that invidious discrimination was *a* motivating factor for the adverse employment action.  Following *Gross v. FBL Financial Services*, 557 U.S. 167 (2009), a plaintiff bringing a discrimination claim under the ADEA must come forward with evidence that age was the "but-for" cause for such an action.  *See Gorzynski*, 596 F.3d at106.

F.3d 114, 125–26 (2d Cir. 2008) (concluding that "overwhelming evidence" of legitimate reason for dismissal warranted judgment as a matter of law).

"[Section] 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including . . . disparate treatment." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *see also Annis*, 136 F.3d at 245 (public employee can state a § 1983 claim based on a violation of equal protection "when []he is treated differently from other similarly situated employees, thus suffering disparate treatment" (internal quotation mark and citation omitted)). "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis*, 136 F.3d at 245. "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 claim, unlike a Title VII claim, can be brought against individuals." *Demoret*, 451 F.3d at 149. As already noted, the same is true for § 1981 discrimination claims. *See* Part III.B., *infra*.

Here, Sareen fails to establish a prima facie case of discrimination. He simply cannot show that the Port Authority's denial of his request for reinstatement occurred under circumstances that would give rise to an inference of discriminatory animus. Although Sareen vaguely claims that his supervisors at the Port Authority discriminated against him in their hiring decisions, he fails to offer evidence that he was treated unfairly *because* of his race, national origin, or age. *See, e.g.*, *Stephens-Buie*, 2011 WL 2574396, at *5 (dismissing disparate treatment claim because "no evidence on the record support[ed] Plaintiff's conclusion that [the adverse employment action] was attributable to unlawful discrimination on the basis of race or national

origin"). In support of his disparate treatment claim, Sareen does not attempt to offer evidence demonstrating that he was treated differently from similarly situated individuals of another race or age. Nor does he point to discriminatory statements made by defendants about individuals in Sareen's protected groups, the timing of the failure to reinstate, or to any other fact from which one could plausibly infer that defendants were motivated by discrimination. His only argument in support of an inference of discriminatory intent is the claim that the Port Authority continued to advertise to fill the position that they denied to him. Although this is a recognized means of showing discriminatory intent, *see Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994), Sareen fails to adduce any admissible evidence to support such a claim. Under these circumstances, Sareen is not entitled to a presumption of discrimination.

Even if Sareen had made out a prima facie case, however, his discrimination claims would still fail at the next stage of the burden-shifting analysis. The Port Authority has articulated a legitimate, non-discriminatory explanation for its decision to deny Sareen's request for reinstatement: When Sareen submitted his request for reinstatement, there was no post to which to reinstate him—the position he had previously held had been eliminated, and there were no other suitable positions to offer him in the unit where he had worked prior to taking leave. Bordas Aff. ¶¶ 20−21; Steven Aff. ¶¶ 26−28. This is entirely consistent with the Port Authority's stated long-term leave policy, *see* Lee Decl. Ex. 4, which Sareen acknowledged when he requested leave, *see id.* Ex. 5.

Sareen offers no evidence from which a reasonable jury could infer that this explanation for declining to reinstate him was not the Port Authority's actual reason, let alone that the decision was motivated by discriminatory animus. *See St. Mary's Honor Ctr., et al. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for *discrimination*'

unless it is shown *both* that the reason was false, *an*d that discrimination was the real reason.") (emphases in original).  Although Sareen claims that there were positions available in other Port Authority departments, Pl. Br. 4–5, and his supervisors' failure to offer him those positions evinces discrimination, the Port Authority's stated policy regarding reinstatement following leave was that job availability would be determined on a department-specific basis.  The Port Authority's adherence to that stated policy is not evidence of discrimination.  *See Meiri*, 759 F.2d at 998 (employee offered no evidence of pretext where she failed to offer evidence that her employer "departed from its general policies in discharging her").  Nor is the Port Authority's policy of eliminating positions as part of a retirement incentive program, without more, indicative of age discrimination; this is a business judgment not amenable to judicial review in connection with a discrimination claim.  *See generally Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1226 (2d Cir. 2004) ("courts must be careful not to second-guess an employer's business judgment that it makes in good faith"); *see also Montana v. First Fed. Sav. & Loan Ass'n of Rochester* 869 F.2d 100, 106 (2d Cir. 1989); *Vuona v. Merrill Lynch & Co., Inc.*, 919 F. Supp. 2d 359, 377 (S.D.N.Y. 2013).

There is simply no evidence in the record from which a jury could infer that invidious discrimination of any kind was a motivating factor in the decision not to reinstate Sareen. Defendants are entitled to summary judgment on Sareen's Title VII, ADEA, §§ 1983 and 1981 discrimination claims.

### D.    Title VII, §§ 1983 and 1981 Retaliation Claims (Refusal to Reinstate)

Sareen also claims that the Port Authority's decision not to reinstate was in retaliation for complaining in November 2009 about perceived discrimination in connection with the Port Authority's failure to promote him on several occasions.

24

In addition to outlawing outright workplace discrimination, Title VII makes it unlawful for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  The statute thus "prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011).  Title VII's anti-retaliation provision is designed "to further [the Act's] goal of a workplace free from [unlawful] discrimination," *id.*, "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

Title VII retaliation claims are evaluated under the *McDonnell-Douglas* burden-shifting framework.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  To establish a prima facie case of retaliation, an employee must show (1) "participation in a protected activity known to the defendant;" (2) "an employment action disadvantaging the plaintiff;" and (3) "a causal connection between the protected activity and the adverse employment action."  *Feingold*, 366 F.3d at 159 (internal quotation marks and citation omitted).

Retaliation claims are also cognizable under §§ 1983 and 1981, *see id.*; *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008), and are similarly analyzed under the *McDonnell-Douglas* burden-shifting framework, *see Broich v. Incorp. Vill. of Southampton*, 462 F. App'x 39, 42 (2d Cir. 2012); *Feingold*, 366 F.3d at 159.

Defendants argue that Sareen both failed to engage in a protected activity and failed to establish a causal connection between the purported protected activity and the adverse employment action.  Assuming *arguendo* that Sareen's November 2009 conversation with Louis constitutes a protected activity, Sareen still fails to establish the requisite causal connection between that activity and the refusal to reinstate him following his long-term leave.

One way a plaintiff can show causal connection is through temporal proximity.  *See GormanBakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (alteration in *GormanBakos*)); *Sumner v. U.S. Postal Serv.*, 899 F.3d 203, 209 (2d Cir. 1990) ("The causal connection between the protected activity and the adverse employment action can be established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment . . . .").  Sareen argues that such proximity exists here.  But the adverse employment action Sareen complains of (the refusal to reinstate him following the period of long-term leave) occurred in July 2011, more than a year and a half after he engaged in the protected activity (complaining to Louis about being passed over for promotions on the basis of race).  The temporal gap between these two events is too large to create the requisite causal connection.  *See, e.g.*, *Lioi v. New York City Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 593 (S.D.N.Y. 2012) (temporal nexus of ten months between protected activity and discriminatory treatment "is insufficient to establish causal connection"); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 456–58 (S.D.N.Y. 2012) (three- to six-month gap insufficient to establish causal connection); *see also Murray v. Visiting Nurse*

*Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) ("district courts within the Second

Circuit have consistently held that the passage of two to three months between the protected

activity and the adverse employment action does not allow for an inference of causation").

Sareen attempts to create the appearance of close temporal proximity by styling the adverse

employment action as his "termination" in May 2010.  Although his employment with the Port

Authority indeed ended on May 20, 2010, that was merely because he voluntarily requested

long-term leave beginning on that date.  The adverse employment action of which he complains

did not occur until he was denied reinstatement the following year.  *See Hill v. Rayboy-*

*Brauestein*, 467 F. Supp. 2d 336, 354 (S.D.N.Y. 2006) ("To be an 'adverse employment action,'

the condition must materially change the conditions of employment . . . . In addition, Plaintiff

must have experienced 'some attendant negative result, [such as] a deprivation of a position or

opportunity.'" (quoting *Pimentel v. City of New York*, No. 00 Civ. 326 (SAS), 2002 WL 977535,

at *3 (S.D.N.Y. May 14, 2002) (alteration in *Hill*))).

   Sareen has not met his burden of showing a prima facie case of retaliation.  Defendants'

motion for summary judgment as to Sareen's retaliation claims is granted.

### E.       Declaratory Judgment

   The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 ("DJA"), gives a district court

the discretion to "declare the rights and other legal relations of any interested party seeking such

declaration," *id.* § 2201(a).  "But that discretion does not extend to the declaration of rights that

do not exist under law. . . . The DJA is procedural only, and does not create an independent cause

of action."  *Chevron Corp. v. Naranjo*. 667 F.3d 232, 244 (2d. Cir. 2012) (internal quotation

marks and citations omitted).  "The Second Circuit has stated that 'two principal criteria guiding

the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a

useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Bridgeport & Port Jefferson Steamboat Co., et al. v. Bridgeport Port Auth.*, 566 F. Supp. 2d 81, 106 (D. Conn. 2008) (quoting *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).

The nature of Sareen's claim for declaratory judgment is not entirely clear. He claims that, following his termination, the Port Authority "billed him" for vacation days he took in 2010 and asked him to refund various tax withholdings paid to federal and state tax authorities during 2010. Pl. Br. 29−30. Sareen argues that the Port Authority, in denying his entitlement to vacation days in 2010 and attempting to recover past tax withholdings, violated its own severance policy, as well as various state and federal constitutional provisions, and that this "entitle[s him] to Declaratory Relief under the law." Am. Compl. ¶¶ 101−03.

But Sareen does not explain the specific legal bases on which he bases his claim for declaratory relief. To the extent that Sareen seeks a declaratory judgment based on purported violations of state law, *i.e.* a breach of contract claim premised on the purported violation of the Port Authority's severance policy or a claim under the New York State Constitution, those claims are dismissed for the reasons discussed in Part III.F., *infra*. To the extent that he claims that the Port Authority's conduct violates the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments and thus entitles him to relief under § 1983, he fails to show that he has a "substantive claim of right to such relief." *In re Joint E. and S. Dist. Asbestos Litig*, 14 F.3d 726, 731 (2d Cir. 1993). To support a § 1983 claim premised on a violation of due process, a plaintiff must show "(1) a property interest; (2) that has been taken under the color of state law; (3) without due process or just compensation." *Anderson v. State of N.Y., Office of Ct.*

*Admin. of Unified Ct. System*, 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009).  Sareen has no

constitutionally protected property interest in severance benefits, and thus procedural due process

protections are not triggered.  *See Baron v. Port Auth. of N.Y. & N.J.*, 271 F.3d 81, 88−89 (2d

Cir. 2001).  Nor can Sareen establish a § 1983 claim premised on a violation of equal protection:

He fails to even assert that the denial of severance benefits was the result of discrimination.  *See*

*Phillips v. Girdich*, 408 F.3d 124, 129−30 (2d Cir. 2005).  Accordingly, Sareen's claim for

declaratory relief is dismissed.

### F.       Remaining State Law Claims

Having dismissed all of Sareen's federal claims, the Court must now determine whether

to exercise supplemental jurisdiction over his remaining claims, all of which arise under New

York state law.

Federal district courts have supplemental jurisdiction over state-law claims "that are so

related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A

district court may, at its discretion "decline to exercise supplemental jurisdiction" if it "has

dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The

Supreme Court has instructed that, in deciding whether to exercise supplemental jurisdiction, a

district court should balance the traditional "values of judicial economy, convenience, fairness,

and comity," *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); and that, as a general

rule, "when the federal claims are dismissed the 'state claims should be dismissed as well,'" *In re*

*Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers*

*v. Gibbs*, 383 U.S. 715, 726 (1966)).  Although the exercise of supplemental jurisdiction is

discretionary, the ordinary case "'will point toward declining jurisdiction over the remaining state-law claims.'" *In re Merrill Lynch*, 154 F.3d at 61 (quoting *Cohill*, 484 U.S. at 350 n.7).

In addition to the state-law based claim for declaratory relief discussed in Part III.E. *infra*, Sareen's remaining claims consist of the following: a discrimination claim under the New York State Constitution in connection with defendants' purported failure to inform him that his previous post had been abolished in 2010 as part of the Port Authority's voluntary retirement program; common law claims for fraud and intentional misrepresentation arising out of comments made by Sareen's supervisors to Sareen purportedly intimating that he would be reinstated; and a common law claim for infliction of emotional distress in connection with the loss of his job. The Court has not invested the resources necessary to resolve these state-law claims, nor do convenience, fairness, and comity require the Court to exercise supplemental jurisdiction.

Although the Court acknowledges that the parties have already conducted discovery in this case, the circumstances still do not counsel in favor of retaining supplemental jurisdiction over state constitutional and common law claims that are in many ways distinct from the federal-law claims that have already been adjudicated. The Court accordingly declines to exercise supplemental jurisdiction over these claims. These claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted as to Sareen's discrimination and retaliation claims under Title VII, the ADEA, §§ 1983 and 1981. The Clerk of Court is directed to enter judgment in defendants' favor as to those claims. Because

the Court declines to exercise supplemental jurisdiction over Sareen's state-law claims, they are dismissed without prejudice. Sareen's claim for declaratory relief is also dismissed without prejudice. The Clerk of Court is directed to terminate the motion at docket number 49, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: December 16, 2013
New York, New York

31